*1067 ATTORNEY DISCIPLINARY ■ PROCEEDING
PER CURIAM
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Randal Alandre Toaston, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Toaston, 14-1734 (La. 8/15/14), 147 So.3d 688.
UNDERLYING FACTS

Prologue Count—The Attorney Registration Requirement Matter

At all pertinent times during the ODC’s investigations of the twenty-six disciplinary complaints at issue in this disciplinary proceeding, respondent’s primary address registered with the Louisiana State Bar Association (“LSBA”) was 7330 Highland Road, Suite 120, Baton Rouge, Louisiana 70808. On August 8, 2014, a judgment of eviction was signed, ordering respondent to vacate the premises of his LSBA primary registration address, Thereafter, the landlord changed the locks. Nevertheless, on or about August 24, 2014, respondent entered the premises by using the services of “Pop-A-Lock” and removed client files and other items.
On August 22, 2014, following respondent’s interim suspension from the practice of law, a curator was appointed to conduct an inventory of respondent’s files and to take appropriate action to protect the interests of respondent’s clients. The curator never recovered any files from rer spondent.
LAs of -the date of this opinion, respondent still has not updated his primary registration address with the LSBA. His Louisiana Attorney Report still lists his office address as 7330 Highland Road, Suite 120, Baton Rouge, Louisiana 70808.
Based on his failure to update his primary registration address, the ODC alleged that respondent violated Rule 1.1(c) (a lawyer is required to comply with all of the requirements of the Supreme Court’s rules regarding annual registration, including payment of Bar dues, payment of the disciplinary assessment, timely notification of changes of address, and proper disclosure of trust account information or any changes therein) of the Rules of Professional Conduct in each of the following twenty-six counts of misconduct.

Count I—The White Matter

On May 3, 2013, Thaddeus White hired respondent to represent him in three pending criminal matters. Mr. White’s wife subsequently paid respondent $600, and respondent apparently agreed to reduce Mr, White’s remaining fee balance by $200 to $250 for each new client Mr. White *1068 referred to him. Although respondent denied agreeing to this referral fee arrangement, he did admit that his clients would see him more often if they referred other clients to him. Mr. White only referred one client to respondent.
Mr. White’s pending criminal matters included cases in the 19th Judicial District Court (probation revocation) and Baton Rouge City Court (traffic ticket). Respondent performed no legal services for Mr. White in these two matters, claiming that Mr. White modified their legal services agreement to limit the representation to his third criminal case in the 18th Judicial District Court (pending felony charge).
With respect to the 18th Judicial District Court case, respondent appeared with Mr. White for his arraignment. Respondent also appeared for subsequent court dates, all of which were continued. However, he faded to appear for a December 4, | a2013 plea hearing. As such, the court appointed a public defender to assist Mr. White, who entered a guilty plea at that time.
Respondent also failed to appear for at least three scheduled meetings with Mr. White and failed to return numerous telephone calls from Mr. White’s family seeking the status of his cases. Respondent additionally failed to refund any of the fee paid or place any portion of the fee into his client trust account as disputed.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(a) (charging an unreasonable fee), 1.5(f)(5) (failure to refund an unearned fee), 3.2 (failure to make reasonable efforts to expedite litigation), 7.2(c)(13) (a lawyer shall not give anything of value to a person for recommending the lawyer’s services), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Count II—The Client Trust Account Matter

On November 8, 2013, respondent’s client trust account was overdrawn in the amount of $39.50 upon presentation of a $220 check. Between October 2013 and July 2014, respondent wrote checks from the trust account made payable to “Cash” and withdrew cash from the trust account at the bank in excess of $50,000, which left no record of the purpose of the funds.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons), 1.15(f) (on client trust accounts, cash withdrawals and checks made payable to “Cash” are prohibited), 8.4(a), and 8.4(c).

Count III—The Clark Matter

DOn June 4, 2013, Henry Clark paid respondent $500 toward an agreed $1,000 fee for respondent to file a writ of certiora-ri on Mr. Clark’s behalf. Mr. Clark subsequently made numerous telephone calls to respondent, which were unanswered and unreturned. After the time for filing the ■writ expired with no action by respondent, Mr. Clark attempted to contact respondent to arrange for a refund of the $500 he paid.
Respondent, by letter, agreed to meet with Mr. Clark at Mr. Clark’s home to discuss the refund, but respondent failed to appear as scheduled. Respondent also failed to return numerous telephone calls from Mr. Clark. A woman presumably sent by respondent returned Mr. Clark’s client file to him. However, Mr. Clark never received a refund.
The ODC alleged that respondent’s conduct violated the following provisions of *1069 the Rules of Professional Conduct: Rules 1.4, 1.5(a), 1.5(f)(5), 1.16(a) (a lawyer shall withdraw from the representation of a client if the lawyer is discharged), 1.16(d) (obligations upon termination of the representation), 8.4(a), and 8.4(c).

Count IV—The Grayson Matter

On September 11, 2013, Brandi Grayson hired respondent to represent her in a domestic matter. Ms. Grayson’s father paid respondent’s $350 fixed fee. Respondent did not enroll as Ms. Grayson’s counsel of record, did not appear in court, and did not file any pleadings. Respondent did not refund the unearned fee.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 1.16(a), 1.16(d), 8.4(a), and 8.4(c).

Count V—The Chaney Matter

IfiOn December 12, 2013, Tony Chaney hired respondent to represent his interests in a pending federal civil case. By January 3, 2014, Mr. Chaney paid respondent a total of $500 for the representation. Respondent did not enroll as counsel of record in the case or file any pleadings prior to Mr. Chaney terminating his services. Respondent agreed Mr. Chaney was owed a refund and met with Mr. Chaney twice following the termination. Nevertheless, respondent failed to refund the unearned fee. Mr. Chaney filed a claim with the LSBA’s Client Assistance Fund seeking to recover the fee.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 8.4(a), and 8.4(c).

Count VI—The Edwards Matter

In November 2003, Leonard Edwards pleaded guilty in a criminal matter and was sentenced to prison. In April 2013, Mr. Edwards hired respondent to represent him in an attempt to have his sentenced reduced by modifying it to run concurrently with another sentence. Mr. Edwards’ parents paid respondent a total fee of $2,000.
Mr. Edwards met with respondent one time and had no further contact with him. Mr. Edwards and his parents called respondent numerous times and left several messages, all of which were unanswered and unreturned. Respondent answered one call from Mr. Edwards’ father and said he would call him back, but he failed to do so.
Instead of pursuing the sentence modification Mr. Edwards had requested, respondent drafted a motion for a new trial based on new evidence, failing to pursue the matter for which he was retained. As a matter of law, such a motion was untimely and unavailable given Mr. Edwards’ guilty plea.
^Respondent agreed the Edwards family was owed a refund but failed to provide same. Mr. Edwards filed a claim with the Client Assistance Fund seeking to recover the fee.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 8.4(a), and 8.4(c).

Count VII—The Sanford Matter

In February 2013, Emerald Sanford paid respondent $500 to complete an ex-pungement of a criminal record. Ms. Sanford was not able to afford the filing fees until September 2013. However, when she tried to contact respondent at the time about proceeding with the expungement, her repeated telephone calls and text messages to respondent were not answered or returned. Respondent did not file the ex-pungement or provide any services to Ms. Sanford, admitting that he “dropped the *1070 ball” and owed Ms. Sanford a full refund. Nevertheless, he has not refunded any of the fee.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 8.4(a), and 8.4(c).

Count VIII—The Theus Matter .

■ At some point between September 5, 2012. and January 23, 2013, Victor Theus hired respondent to represent him in a criminal matter, Mr. Theus’ mother paid respondent $500 for the representation. Respondent filed no pleadings on Mr. Theüs’ behalf but did adopt the pro se motions Mr. Theus had filed himself. Respondent failed to appear at three of five hearings that were scheduled after he was hired. Mr. Theus pleaded guilty in November 2013 and, thereafter, attempted |7to retrieve his client file from respondent. To that end, Mr. Theus called respondent fifteen to twenty times and sent him several letters, all of which were unanswered and unreturned. Respondent failed to return Mr, Theus’ file to him.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4,1.16(d), and 8.4(a).

Count IX—The Kemp Matter

Antonio Kemp hired respondent to represent him in a criminal matter, and Mr. Kemp’s mother paid respondent $3,000 for the representation. In December 2013, following his sentencing, Mr...Kemp began efforts to obtain his client file from respondent. He and his family made numerous telephone calls and wrote letters to respondent, all of which were unanswered. Respondent finally returned Mr. Kemp’s file at the formal hearing in this disciplinary proceeding.
The ODC alleged that respondent’s cpn-duct violated the following provisions of the Rules of Professional Conduct: Rules 1.4,1.16(d), and 8.4(a). .

Count X—~The Jasmine Matter ■

In March 2013, Gill Jasmine hired respondent to file an application for post-conviction relief. Mr. Jasmine and his family paid respondent $600 of the $1,000 fee. Respondent failed to timely file the application. As such, Mr. Jasmine filed the application himself. However, the application was dismissed as untimely. Respondent álso- failed to communicate with Mr. during the representation, failing to visit Mr. Jasmine in prison as agreed and failing to answer or respond to repeated telephone calls from Mr. .Jasmine. Additionally, respondent failed to refund the unearned fee, despite requests from Mr. Jasmine.
|sThe ODC alleged that respondent’s conduct violated the following provisions of the- Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 1.16(d), 8.4(a), and 8.4(e).

Count XI—The Bell Matter

On March 27, 2013, Bobby Bell, hired respondent to represent him in two pending criminal matters in Bienville Parish. Mr. Bell’s mother paid respondent $500 toward his $4,000 fixed fee, with the balance due after Mr. Bell’s release from prison. Respondent enrolled as Mr. Bell’s counsel of record on May 7, 2013 but filed no further pleadings in either, case. Mr. Bell did not see respondent again after his enrollment, and his letters to respondent went unanswered. After enrolling, respondent performed no services for Mr. Bell, even though his. office sent Mr. Bell a letter indicating that an August 2013 court date was scheduled.
In September 2013, Mr. Bell began filing pro se motions on his own behalf. On November 5, 2013, upon Mr. Bell’s motion, the court removed respondent as counsel *1071 of record and appointed a public defender to represent Mr. Bell. Respondent failed to refund any of the $500 after his representation was terminated by the court, despite repeated requests by Mr. Bell.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 8.4(a), and 8.4(c).

Count XII—The Magee Matter

In August 2012, Christopher Magee hired respondent to represent him in a child custody and visitation matter. Mr. Magee paid respondent $400 of the $500 fee. Respondent drafted a custody agreement and consent judgment but never filed same. Mr. Magee knew respondent was pursuing a resolution by consent and never | constructed him to desist. Nevertheless, respondent never reviewed the consent documents with Mr, Magee and did not conclude the matter by consent. Respondent also failed to appear for a scheduled court date in the matter.
Respondent admitted that he did not complete the matter and that Mr. Magee was owed a full refund. Yet, respondent did not refund any portion of the fee paid.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 8.4(a), and 8.4(c).

Count XIII—The Gay Matter

In 2012, Jamar Gay hired respondent to represent him in a criminal matter. Mr. Gay’s father paid respondent a $500 fixed fee. Thereafter, Mr. Gay was unable to contact respondent. Respondent drafted motions on Mr. Gay’s behalf but never filed same. After Mr; Gay filed a disciplinary complaint against respondent, respondent refunded $400 of the $500 fee paid.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4 and 8.4(a).

Count XIV—The Buchanan Matter

In October 2009, Deborah Buchanan hired respondent to handle her husband’s post-conviction relief, paying him a $1,500 fee. On June 21, 2010, respondent filed a motion to reconsider Mr. Buchanan’s sentence, which he admitted knowing was untimely. The court denied the motion on June 28, 2010. On February 14, 2011, respondent filed a motion for a new trial, which remains pending. Respondent never filed the application for post-conviction relief that he was hired to file. Respondent agreed to refund two-thirds of the fee paid but-failed to do so.
ImThe ODC alleged that respondent’s conduct violated the following provisions.of the Rules of Professional Conduct: Rules 1.1(a), 1.2(a), 1.4, 1.5(a), 1.5(f)(5), 3.3(a) (candor toward the tribunal), 8.4(a), and 8.4(e).,

Count XV— The Hickman Matter

Respondent represented India Hickman in a criminal matter that concluded with Ms. Hickman’s sentencing on March 28, 2011. Between August 2011 and July 2012, Ms. Hickman wrote to respondent five times to request her client file in order to pursue an appeal or post-conviction relief. Ms. Hickman never received her file.
The ODC alleged that respondents conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.16(d) and 8.4(a).

Count XVI—The Green Matter

On February 17, 2012, Miya Green hired respondent to represent her in a lessor/lessee lawsuit with which she had been served a couple of days earlier, paying him a $100 fee. Respondent gave Ms. Green a pauper form to complete and return to him. The next day, Ms. Green could not reach respondent by telephone, so she left *1072 the completed pauper form on the windshield of his car. Respondent admitted that he notarized the form even though he did not see Ms. Green sign it.
Respondent failed to file an answer or otherwise respond to the lawsuit on Ms. Green’s behalf. He also did not request an extension of time to do so, and on March 15, 2012, a preliminary default was entered against Ms. Green. In a subsequent meeting, respondent told Ms. Green he did not file anything on her behalf because he had a case in New Orleans. However, he told her he would contact opposing counsel to negotiate a resolution. Respondent never contacted opposing counsel. Eventually, a $17,000 default judgment was confirmed against Ms. Green. When the opposing party began to attempt to collect the judgment, Ms. Green was forced | nto file for bankruptcy protection. Respondent did not refund any of the $100 unearned fee.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 3.2, 8.4(a), and 8.4(c).

Count XVII—The Kendall Williams Matter

In September 2010, Kendall Williams pleaded guilty in a criminal matter and hired respondent to seek a reduced sentence. Mr. Williams was Sentenced in November 2010, and Mr. Williams’ wife paid respondent $3,200 toward a total fee of $3,500.
In December 2010, respondent filed a “Motion to Reconsider Sentence Imposed Pursuant to the Habitual Offender Law” with a request for bond reduction. However, Mr. Williams was not sentenced as a habitual offender and was incarcerated, not on bond. Respondent admitted that' he did not review the court record before filing the motion. Respondent twice had the hearing on the motion continued and rescheduled. On the last scheduled date of June 1, 2011, neither respondent nor Mr. Williams appeared in court, and the matter was continued without date.
Respondent did not file any other type of post-conviction relief. In April 2012, Mr. Williams filed his own pro se application for post-conviction relief, and a public defender was appointed to assist him.
Respondent did not refund any of the unearned fee. Mr. Williams and his wife filed a claim with the Client Assistance Fund, seeking to recover the amount of the unearned fee.
112The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 3.2, 8.4(a), and 8.4(c).

Count XVIII—The Wilson Matter

In March 2009, Anthony Wilson hired respondent to file an application for post-conviction relief. Mr. Wilson paid respondent $2,600 toward a total fee of $3,500.
In April 2011, respondent drafted a contract of representation, which provided that he would file motions to amend and to reconsider Mr. Wilson’s sentence for a $1,500 fee. When Mr. Wilson received a copy of the draft contract, he suspected respondent had not pursued the application for post-conviction relief for which he had been retained and paid.
Respondent acknowledged that he never filed an application for post-conviction relief. Instead, on July 6, 2011, he filed a motion to reconsider sentence, despite the fact that a motion to reconsider sentence had previously been filed and denied in January 2009. Respondent’s duplicative motion was denied in March 2012. Respondent admitted he did not review the court record before filing the motion.
Mr. Wilson formally terminated respondent’s representation by letter received by respondent in October 2011. In the letter, *1073 Mr. Wilson also requested an accounting and the return of any unearned fees. Mr. Wilson eventually filed a pro se application for post-conviction relief. Respondent agreed to give Mr. Wilson a full refund but failed to do so.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.2(a), 1.3, Í.4, 1.5(a), 1.5(f)(5), 1.16(d), 3.1 (meritorious claims and contentions), 8.4(a), and 8.4(c).

_J¿¡¡Count XIX—The Barbara Williams Matter

In July 2001, Barbara Williams hired respondent on a thirty percent contingency fee basis to represent her in a personal injury matter. Ms. Williams paid respondent $500 to $700 in cash for filing fees. Respondent did not receive his license to practice law in Louisiana until April 2002. He filed a lawsuit on Ms. Williams’ behalf on July 24, 2002, which lawsuit was dismissed as abandoned on November 17, 2008. Respondent never refunded any part of the filing fee paid by Ms. Williams even though dismissal of her lawsuit would likely have generated some refund by the court or left a balance in respondent’s hands. Ms. Williams filed a claim with the Client Assistance Fund, seeking to recover the amount of her loss.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(c) (contingency fee agreements), 3.2, 8.4(a), and 8.4(c).

Count XX—The Howard, Matter

In July 2010, Jerry Howard hired respondent to represent him with respect to the conditions of his confinement in state prison. At that time, Mr. Howard had already filed a pro se lawsuit, which had been dismissed without prejudice because it was filed in the wrong venue. Mr. Howard’s mother paid respondent $500 toward the representation. Respondent also received Mr. Howard’s documents regarding the matter.
Respondent then scheduled but canceled a meeting with Mr. Howard. After the missed meeting, Mr. Howard, by letter, asked respondent to return his documents so he could meet court filing deadlines. Respondent did not return the documents. Instead, he scheduled another meeting with Mr. Howard in September 2010, which he also canceled.
| ^Respondent did not appeal the dismissal of Mr. Howard’s pro se lawsuit. He also did not refile the lawsuit in the correct venue or provide any other legal services to Mr. Howard. Respondent admitted that he “dropped the ball” on this matter and owed Mr. Howard a full refund.
Mr. Howard tried to contract respondent by mail, and Mr. Howard’s mother tried to contact respondent by telephone. However, there was no communication until Mr. Howard filed a disciplinary complaint against respondent with the ODC in December 2010. Thereafter, respondent visited Mr. Howard in prison to offer his legal services and to ask him to withdraw the complaint. Mr. Howard declined and requested a refund. Respondent did not refund the unearned fee or return Mr. Howard’s documents.
While investigating Mr. Howard’s complaint against respondent, the ODC learned respondent was ineligible to practice law from September 19, 2012 until October 12, 2012 for failing to pay bar dues and the disciplinary assessment. During this period of ineligibility, respondent had appointments with clients and scheduled court dates on thirty-five occasions.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 1.16(a), *1074 1.16(d), 3.2, 5.5(a) (engaging in the unauthorized practice of law), 8.4(a), and 8.4(c).

Count XXI—The Mitchell/Williams Matter

In August 2013, Cheryl Mitchell hired respondent to represent her son, Kendric Williams, in a criminal matter. Ms. Mitchell paid respondent a $1,300 fixed fee.
Thereafter respondent met with Mr. Williams only one time and filed no pleadings on Mr. Williams’ behalf. Respondent also failed to return numerous | ^telephone calls from Mr. Williams and Ms. Mitchell. Additionally, respondent failed to appear for several court dates on Mr. Williams’ behalf.
In July 2014, Ms. Mitchell informed respondent, via a telephone message, that his services were no longer needed. Respondent acknowledged that his services were terminated and that Ms. Mitchell was due a refund. Yet, he failed to refund the unearned fee. Ms. Mitchell sued respondent and obtained a $1,300 judgment against him. However, the judgment was vacated due to the inability to effect proper service upon respondent.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 1.16(d), 3.2, 8.4(a), and 8.4(c).

Count XXII—The Jones Matter

On August 21, 2013, Quentin Jones hired respondent to petition for visitation rights with his child, who resided in West Virginia. Mr. Jones paid respondent a $300 fixed fee to handle the matter; When respondent learned that Mr. Jones was in arrears in his child support payments, he deferred preparation of the visitation agreement until Mr. Jones could come current, whereupon they would meet again to determine a strategy regarding the visitation agreement. This meeting never occurred. Mr. Jones subsequently terminated respondent’s services. Nevertheless, ' respondent did not refund any part of the unearned fee.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 8.4(a), and 8.4(c).

Counts XXIII & XXIV— The Trumble Matter

|lfiIn April 2011, Jocelyn Trumble hired respondent to represent her. in divorce proceedings against Donald Ray Trumble, Ms. Trumble paid respondent $350 for the representation. On May 10, 2011, respondent filed a petition for divorce on Ms. Trumble’s behalf, and Ms. Trumble paid the filing fees. Thereafter, Ms. Trumble called respondent several times to inquire about the status of her divorce. Respondent either did not answer or return her calls or provided no substantive response to her inquiry-when he did answer.
' In August 2011, Mr. Trumble consulted attorney Danny Woods about the pending divorce proceedings. By May 2012, Mr. Woods had sent respondent all pleadings necessary to finalize the divorce judgment. Mr. Woods had also called and written to respondent répeatedly with no response. In September 2013, Mr. Woods officially enrolled in the case so he could proceed with obtaining the divorce judgment. Still unable to get a response from respondent, in May 2014, Mr, Woods wrote directly to Ms. Trumble to inquire if respondent still represented her.
Ms. Trumble, with the assistance of a legal aid attorney she retained because she could not get in contact with respondent, pbtainéd a divorce judgment on, August 31, 2014. At that time, she learned $102 in excess court fees remained on deposit in the case. Respondent did not refund any portion of the $350 Ms. Trumble had paid *1075 him, nor did he obtain and forward to her the excess court fees.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 3.2, 8.4(a), and 8.4(c).

Count XXV— The White/Caliste Matter

In May 2014, Ricketa White hired respondent to represent her fiancé, Clendell Caliste, in a criminal matter. Ms. White paid respondent $600 for- the representation. Respondent failed to .appear at Mr. Caliste’s June 9, 2014 arraignment. Mr. Caliste |17retained new counsel, who enrolled on June 19, 2014. Nevertheless, on June 20, 2014, respondent filed a motion to enroll as Mr. Caliste’s counsel. On June 26, 2014, Mr. Caliste appeared in court with his new attorney for his arraignment. At that time, the court denied respondent’s motion to enroll. Respondent eventually refunded $300 of the $600 fee Ms. White had paid.
The ODC alleged that respondent’s conduct violated the following provisions. of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 1.16(a), 1.16(d),' 8.4(a), and 8.4(c).

Count XXVI—The Criminal Matter

On October 12, 2012, respondent was arrested for careless operation of a vehicle, driving under suspension, and resisting an officer. Respondent was subsequently billed with these charges, and on August 13, 2013, he was placed in a diversion program. Thereafter, he failed to pay the required diversion program fee and failed to appear for a scheduled October 15, 2014 court date, resulting in a bench warrant for his arrest that remains active. .
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c).

Epilogue Count—The Failure to Cooperate Matter

On multiple occasions and with, respect to all twenty-six counts of misconduct, respondent failed to cooperate with the ODC in its investigation. His failure to cooperate encompassed, on occasion, failing to maintain a ■ current primary registration address with LSBA, failing to respond to written communications, failing to claim certified mail, failing to answer telephone calls or respond to ^messages,- evading service of a subpoena, canceling a scheduled sworn statement, and failing to appear at another scheduled sworn statement. Respondent also failed to produce any trust account records or client files, hampering not just the ODC’s investigation of these complaints but also hampering the curator’s ability to protect.the interests of respondent’s clients following his interim suspension.
Based on respondent’s failure to cooperate, the ODC alleged that he violated Rule 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority) of the Rules of Professional Conduct in Counts I—XII, XVII, XVIII, and XXI—XXVI and violated Rule 8.1(e) (failure to cooperate with the ODC in its investigation) of the Rulés of Professional.Conduct in Counts I—XXVI.
DISCIPLINARY PROCEEDINGS
In December 2014, the ODC filed formal charges against respondent. .Respondent answered the formal charges, denying any misconduct. The matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee on May 18-19, 2015.

*1076
Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made the following findings regarding each count of the formal charges:
Prologue Count—The Attorney Registration Requirement Matter: The committee found that respondent was evicted from his LSBA primary registration address. Many of respondent’s clients and their family members had difficulty | ^trying to contact respondent by mail or in person at his office. Before the formal hearing in this matter, the committee chair twice ordered respondent to update his LSBA primary registration address. At the hearing, respondent testified that he called the LSBA to make this change but that he could not confirm the change was made because his information did not appear on the LSBA website while he was on interim suspension. In the absence of evidence that respondent’s primary registration address was changed with the LSBA, the committee determined respondent violated Rule 1.1(c) of the Rules of Professional Conduct, causing both the ODC and his clients to have trouble contacting him.
Count I—The White Matter: The committee made factual findings consistent with the underlying facts set forth above. Additionally, the committee concluded that perhaps respondent did not consider Mr. White worthy of his attention because Mr. White only referred one client to him. The committee also found respondent not credible when he claimed that Mr. White limited the representation to the 18th Judicial District Court case because respondent provided no evidence of any modification of their legal services arrangement. Furthermore, respondent claimed that he requested a continuance of the December 4, 2018 hearing in the 18th Judicial District Court case, but the committee found this claim not credible in the absence of any notation in the court record. Finally, the committee determined that respondent’s failure to refund the unearned fee constitutes conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.3, 1.4, 1.5(f)(5), 7.2(c)(13), 8.4(a), and 8.4(c).
Count II—The Client Trust Account Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also noted respondent’s testimony that he had no ledger or other systemic method of tracking client funds; instead he made notes of fees received and sometimes gave [gnreceipts to clients (without retaining a copy). He failed to produce any such records at the formal hearing. Respondent also testified that he did not reconcile the balance of his trust account. According to the committee, respondent relied upon his memory, not his books, to keep track of client funds, which was a grossly inadequate method.
The committee further found that respondent’s testimony revealed his lack of understanding of the difference between trust funds and operating funds or of the nature of trust funds. He testified that it was not an overdraft if he withdrew cash without writing a check and that it was the bank’s error, for which he was not responsible, to give him more cash than was in the account. Such reliance left him with no method of determining whether he was taking one client’s funds for purposes relating to another client.
Respondent testified that some withdrawals were for his fees and others were to pay third parties. However, he failed to produce even a single client accounting or settlement distribution or any third-party invoices or receipts to account for the withdrawals. He failed to give any credible explanation for the withdrawals, leading the committee to conclude that a signifi *1077 cant portion of the withdrawals constituted conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.15(a), 1.15(f), 8.4(a), and 8.4(c).
Count III—The Clark Matter: The committee made factual findings consistent ■with the underlying facts set forth above. The committee also noted Mr. Clark’s testimony that respondent was supposed to return the weekend after the initial payment to pick up the other $500 but never came back. Respondent testified that he planned to give Mr. Clark a full refund but was unable to contact Mr. Clark. The committee found this excuse to be untenable. Mr. Clark testified that he was regularly at home, denied that respondent had ever left his card, and confirmed that |aia woman from respondent’s office was able to deliver his client file to him personally. The committee also concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.4, 1.5(f)(5), 8.4(a), and 8.4(c). Although respondent was not charged with violations of Rules 1.1(a) and 1.3, the committee found he failed to meet the requirements of competence and diligence and will consider these failures as aggravating factors.
Count IV—The Grayson Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also noted that, although respondent testified he contacted opposing counsel regarding a continuance and prepared motions in the case, he did not produce any evidence of these documents. Respondent agreed that Ms. Grayson’s father was due a refund but testified that he did not provide the refund because he was unable to contact the father, an excuse the committee found to be untenable. The committee also concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.3, 1.4,1.5(f)(5), 8.4(a), and 8.4(c).
Count V—The Chaney Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also noted respondent’s testimony that he did not provide Mr. Chaney with a refund because he suspected Mr. Chaney had mental problems and was homeless, he had difficulty contacting Mr. Chaney, and he wanted a third person present when he provided the refund, an excuse which the committee found to be untenable. The committee reasoned that, if respondent wanted a witness present for the refund, it was his responsibility to bring one; yet respondent did not even bring the $500.to the two |^meetings he had with Mr. Chaney following the termination. The committee also concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.4, 1.5(f)(5), 8.4(a), and 8.4(c).
Count VI—The Edwards Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also noted Mr. Edwards’ testimony that he never gave respondent any new evidence to pursue a new trial, describing the motion for a new trial as “phony.” The services respondent did perform failed to demonstrate basic competence in his chosen field of criminal defense law. The committee also found disturbing Mr. Edwards’ testimony, which was credible, that respondent initially indicated he could help Mr. Edwards because he was good friends with the district attorney and had an inside connection. Furthermore, respondent testified that money *1078 to refund to the Edwards family was in one of his accounts; yet he failed to refund any of the fee, which the committee considered to constitute a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules Ll(a), 1.2(a), 1.3, 1.4, 1.5(f)(5), 8.4(a), and 8.4(c).
.Count VII—The Sanford Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee additionally determined that respondent’s failure to- refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.3, 1.4,1.5(f)(5), 8.4(a), and 8.4(c).
Count VIII—The Theus Matter; The committee made factual findings consistent with the underlying facts set forth above. Based on these findings, the committee determined respondent violated Rules 1.4, 1.16(d), and 8.4(a). Although | ^respondent was not charged with a violation of Rule 1.3, the committee nevertheless found that he did so and will consider this as an aggravating factor.
I^Count IX—The Kemp Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also noted respondent’s testimony that he had Mr. Kemp’s file at his home and was aware that Mr. Kemp wanted it; however, he believed he could not return the file following his interim suspension, an excuse the committee found to be not credible.
Based on these findings, the committee determined respondent violated Rules 1.4, 1.16(d), and 8.4(a).
Count X—The Jasmine Matter: The committee made factual findings consistent with the underlying facts set forth above. Additionally, the committee accepted Mr. Jasmine’s testimony that he drafted the application for post-conviction relief as he subsequently filed a .copy he had retained. The committee did not accept as truthful respondent’s testimony that' the application was his work product because he did not produce a draft or a copy of the application he claimed to have written and filed. Respondent also testified that he filed the application but that the clerk’s office lost it. The committee reasoned that, if this is true, respondent did not meet the required standard of competence because he failed to obtain a stamped copy proving his filing, failed to confirm the filing prior to the expiration of the filing deadline, and failed to investigate the lost application with the clerk’s office. Respondent argued these were responsibilities of Mr. Jasmine’s family, but the committee determined they were respondent’s professional obligations. Finally, the committee concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.2(a), 1.3, 1.4, 1.5(a), 1.5(f)(5), 8.4(a), and 8.4(c).
Count XI—The Bell Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also noted respondent’s ■ testimony that he agreed to defer payment of the remaining fee because Mr. Bell “intimated” he was innocent, and respondent thought Mr. Bell would get out of prison quickly. When it appeared the case was “a little more difficult,” respondent claimed he asked Mr. Bell’s mother for additional money, which she was not able to provide at the time. Respondent claimed the scope of the representation was changed. However, in the absence of any evidence that Mr. Bell had misrepresented the facts of his case, the committee found the risk the case might entail more work than respondent *1079 initially believed when he set the fee is respondent’s business risk. Absent Mr. Bell’s agreement, the committee determined the scope of the representation was not changed. Furthermore, even if respondent’s claim that he visited Mr. Bell in prison were true, those visits did not produce any tangible results during the six months of his representation. While respondent testified he never told Mr. Bell that he would not represent him unless more of the fee was paid up front, he repeatedly brought up his need for gas money and other costs. Based on these requests, the committee determined respondent was insisting on more payment before proceeding with services, contrary to his fee agreement.
.The committee also rejected respondent’s excuse for not refunding the unearned fee, which excuse was that the fee also included respondent’s future services on charges pending against Mr. Bell in Natchitoches Parish. The committee noted respondent’s testimony on this issue was inconsistent. While respondent stated he was representing Mr. Bell on the Natchi-toches charges, he also stated he was waiting to see if Mr. Bell would hire him to handle those charges when his family had more money available. The committee accepted Mr. Bell’s version that the fee was paid for representation on the Bienville charges, finding that the $4,000 fixed fee, including the $500 paid, pertained exclusively to the Bienville Parish | ^matters. Finally, the committee concluded that respondent’s failure to refund the $500 constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.2(a), 1.3, 1.4, 1.5(f)(5), 8.4(a), and 8.4(c).
Count XII—The Magee Matter; The committee made factual findings consistent with the underlying facts set forth above. The committee also found there was. not clear and convincing evidence of a lack of adequate communication between respondent and Mr. Magee based on the evidence and testimony presented at the hearing. The committee further noted Mr. Magee’s testimony that he never believed the matter could be resolved amicably without a court appearance and attempting to resolve the matter by consent was respondent’s idea. Respondent testified that he met with Mr. Magee a few times and, when Mr. Magee reported he was on good terms with .the mother of his child, that he planned to get the mother to sign the consent agreement when the scheduled court date was near. However, according to respondent, since Mr. Magee did not contact him before the court date to inform him they were still on good terms, respondent did not appear for the court date and had- no further communication with Mr. Magee. Finally, the committee concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.3, 1.5(f)(5), 8.4(a), and 8.4(c).
Count XIII—The Gay Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also noted respondent’s testimony that the reason he did not file the prepared motions on Mr. Gay’s behalf was because of an error by his office. Respondent further testified that Mr. Gay agreed to the partial refund, and the committee determined the receipt for the refund signed by Mr. Gay indicated he was satisfied with respondent’s work.
I^Based on these findings, the committee determined respondent did not violate Rules 1.4 and 8.4(a) as alleged in the formal charges.
Count XIV—The Buchanan Matter: The committee made factual findings consistent with the underlying facts set forth *1080 above. The committee also noted respondent’s testimony that he was waiting to file the application for post-conviction relief until the court ruled on the motion for a new trial, but the committee pointed out that respondent never checked the status of the motion. The committee rejected respondent’s explanation that he did not file the application for post-conviction relief because he had previously been successful with untimely motions in lieu of the application and that Mr. Buchanan agreed to this strategy. During the hearing, it was apparent respondent either (1) did not understand the unique requirements of a motion for a new trial, a motion to reconsider sentence, and an application for post-conviction relief, or (2) believed the requirements were of no consequence since he could rely upon the good will of the prosecutor or the court to overlook the inapplicability or deficiency of his motions. The committee found Mr. Buchanan to be a knowledgeable inmate who clearly knew the difference between these motions and an application for post-conviction relief, and it was only the latter for which he hired respondent. Finally, the committee concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.1(a), 1.2(a), 1.5(f)(5), 3.3(a)(2), 8.4(a), and 8.4(c).
Count XV—The Hickman Matter; The committee made factual findings consistent with the underlying facts set forth above. Additionally, the committee noted that respondent implied Ms. Hickman already had access to at least some file materials because, when he received discovery materials from the district attorney’s office, he gave them to Ms. Hickman’s grandmother and did not keep a copy for his client file. The committee determined that, if true, this is not a substitute forj^returning Ms. Hickman’s complete file to her and demonstrates a lack of competence and diligence by not retaining documents that could have been of use in preparing for trial. Regardless, the committee accepted the testimony of Ms. Hickman’s grandmother, who stated that she never received any documents from respondent.
Based on these findings, the committee determined respondent violated Rules 1.16(d) and 8.4(a).
Count XVI—The Green Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.1(a), 1.2(a), 1.3,1.5(f)(5), 8.4(a), and 8.4(c).
Count XVII—The Kendall Williams Matter: The committee made factual findings consistent with the underlying facts set forth above. Additionally, the committee noted respondent’s testimony that his strategy was to continue the motion to reconsider Mr. Williams’ sentence so it would never be heard. The committee also concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.1(a), 1.2(a), 1.3, 1.5(f)(5), 3.2, 8.4(a), and 8.4(c).
Count XVIII—The Wilson Matter: The committee made factual findings consistent with the underlying facts set forth above. Additionally, the committee noted that respondent explained he did not file the application for post-conviction relief because he was following the same strategy he had used in the Buchanan matter of filing motions in lieu of the application. The committee determined that this strategy led *1081 respondent to repeatedly file motions that were unnecessary, untimely, or without substantive basis. The committee further noted Mr. Wilson’s | ^testimony that he advised respondent the motion to reconsider sentence was duplicative and not what he had hired respondent to do, which was to file an application for post-conviction relief. According to the committee, Mr. Wilson clearly knew the difference between the two pleadings. Finally, the committee concluded that respondent’s.failure to refund the unearned fee constituted a conversion of elient funds. . .
Based on these findings, the committee determined respondent violated Rules 1.1(a), 1.2(a), 1.3, 1.5(f)(5), 3.1, 8.4(a), and 8.4(c).
Count XIX—The Barbara Williams Matter: The committee made factual findings consistent with the underlying facts set forth above. Additionally, the committee noted Ms. Williams’ testimony that she believed respondent was actively pursuing her case; she did not learn of the dismissal until she filed a disciplinary complaint against respondent.
The committee further found that Ms. Williams’ last conversation with respondent was after her deposition was taken in the case. She testified that respondent did not return her telephone calls but would occasionally appear at her home unannounced. Respondent testified that he last spoke to Ms. Williams before 2006. He claimed that, when her deposition did not go well, she refused to attend a second deposition and indicated she did not want to proceed with her lawsuit. The committee found this testimony to not be credible. Ms. Williams denied knowing about a second deposition or that such a conversation had taken place. Respondent also claimed he was unable to contact Ms. Williams, as she did not return one or two telephone messages he left. However, the committee concluded that Ms. Williams’ home address and telephone number were known to respondent and never changed; thus, she was readily accessible to him by letter if not by telephone.
Respondent further testified that his initial efforts resulted' in a nuisance settlement of $1,000, but Ms. Williams wanted to proceed with the lawsuit at that ^time. The committee believed respondent had expected an early settlement and was unwilling to proceed to trial with a contested case. The committee specifically found that Ms. Williams did not instruct respondent to drop the lawsuit. Finally, the committee concluded that respondent’s failure to refund the unused filing fees constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.2(a), 1.3,1.4, 3.2, 8.4(a), and 8.4(c).
Count XX—The Howard Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.3, 1.4, 1.5(f)(5), 1.16, 5.5(a), 8.4(a), and 8.4(c).
Count XXI—The Mitchell/Williams Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also concluded that respondent’s failure to refund the unearned . fee . constituted a conversion of client funds..
Based oh these findings, the committee determined respondent violated Rules 1.3, 1.4,1.5(f)(5), 8.4(a), and 8.4(c).
Count XXII—The Jones Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee noted respondent’s testimony that the purpose of the representation was to prepare a “guideline” custody *1082 and visitation agreement that could be filed by the parents or by an attorney licensed to practice law in West Virginia. The committee found this scope of representation to be: more credible than the indication by Mr. Jones that respondent was to file a petition on his behalf. Respondent further testified that he prepared the agreement but did not make corrections as directed by Mr. Jones’ |anfamily, procrastinating in meeting with Mr. Jones to complete the agreement and admitting he never gave the completed agreement to Mr. Jones. The committee specifically found that Mr. Jones is entitled to a full refund, and it concluded that respondent’s failure to refund the unearned fee constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.2(a), 1.3, 1.4,' 1.5(f)(5), 8.4(a), and 8.4(c).
• Counts XXIII & XXIV—The Trumble Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also rejected as not credible respondent’s testimony that he was unable to contact Ms. Trumble and that she asked him to “kind of stay the proceedings.” Respondent’s testimony was in direct contradiction to Ms. Trumble’s testimony that respondent knew her address and telephone number, which did not change until after' the divorce judgment was rendered, to Mr. Woods’ success in contacting Ms. Trumble, and to Ms. Trum-ble’s active participation in obtaining the divorce judgment. The committee also concluded that respondent’s failure to refund the unearned fee and failure to forward Ms. Trumble the excess court fees constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.1(a), 1.3, 1.4, 1.5(f)(5), .3.2, 8.4(a), and 8.4(c).
Count XXV—-The White/Caliste Matter: The committee made factual findings consistent with the underlying facts set forth above. The committee also found respondent’s testimony-about his failure to appear at the .June 9, 2014 arraignment to be inconsistent as he testified that he did not appear because the presiding judge was not the judge assigned to the case and also because he had no knowledge of the arraignment. The committee then determined respondent refused to acknowledge his services had been terminated when he contended that a hearing |s1was necessary to determine who represented Mr. Caliste. Finally, the committee concluded that none of the $600 fee was earned and that respondent’s failure to refund the full amount constituted a conversion of client funds.
Based on these findings, the committee determined respondent violated Rules 1.2(a), 1.3, 1.5(f)(5), 1.16(a), 1.16(d), 8.4(a), and 8.4(c). .= '
Count XXVI—The Criminal’ Matter: The committee made factual findings consistent with the underlying facts set forth above/ The committee also noted the arresting officer’s testimony that he and another' officer involved in the' matter were subpoenaed for several court hearings at which respondent did not appear, Respondent admitted his bail bondsman notified him of the forfeiture of his appearance bond. Respondent also denied speeding and improper lane usage arid denied telling the officers that he did not have a driver’s license. Furthermore, he denied failing to pay the required diversion program fee, denied knowing he was removed from the diversion program, and denied knowing about court dates or active warrants for his arrest. The committee found all of respondent’s denials to be not credible.
Based on these findings, a majority of the committee determined respondent violated Rules 8.4(a), 8.4(b), and. 8.4(c). One of the-committee’s lawyer members dissent *1083 ed, instead finding that the officers’ testimony was not credible and that the matter was premature for the committee’s consideration in the absence of a conviction or other final adjudication of the criminal and traffic charges against respondent.
Epilogue Count—The Failure to Cooperate Matter: The committee made factual findings consistent with the underlying facts set forth above. Based on these facts, the committee determined respondent violated Rule 8.1(b) in Counts I—XII, XIV, XVII, XVIII, and XXI—XXVI and viplat- ' ed Rule 8.1(c) in Counts I—XXVI.
132The committee then determined that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. The committee found that, at a minimum, respondent acted negligently in failing to provide competent representation to his clients and in continuing to practice law while ineligible to do so. At a minimum, respondent acted knowingly in failing to abide by the agreed scope of representations, in neglecting legal matters, and in failing to make reasonable efforts to expedite litigation. The committee further determined that respondent acted intentionally in failing to reasonably communicate with his clients and opposing counsel, failing to return client files upon termination of representations, failing to properly maintain his client trust account and funds, failing to refund unearned fees, failing to pay bar assessments and maintain a primary registration address, and failing to cooperate with the ODC’s investigations. He also intentionally engaged in á pattern of dishonesty in his practice of law by accepting fees without performing the agreed-upon services, intentionally failed to communicate with clients and refund the unearned fees, and intentionally presented implausible excuses and explanations for these lapses. Respondent’s arrest and subsequent failure to pay the required diversion program fees and failure to appear at scheduled court proceedings were also intentional acts, according to the committee. The committee found that respondent’s misconduct caused actual and significant harm to his clients. The committee also found that respondent harmed the legal profession by failing to cooperate with the ODC. Finally, the committee determined the baseline sanction is disbarment based on sanctions imposed by this court in previous cases addressing conversion of client funds and failure to account for client trust account funds.
In aggravation, the committee noted a pattern of misconduct, multiple offenses, and respondent’s refusal to acknowledge the wrongful nature of his, conduct. In further aggravation,.the.committee noted respondent’s attitude | .^expressed in his excuses and explanations of his misconduct, such as essentially withholding services to pressure clients into making additional payments, claiming it was. not necessary for him to appear at a scheduled hearing for a client, despite being paid to do so, because a public defender was- available- to fill in, and claiming he did not refund one client’s unearned fees because he suspected .the client was homeless and had mental problems. The committee also noted respondent’s inability to provide a credible explanation for why he had not refunded fees he had admitted were not earned.
Regarding mitigating factors, the committee declined to consider in mitigation the death of respondent’s friend, the death of his grandmother, and his wife’s heart attack because he offered no objective evidence as to how these events impacted his ability to attend to client matters, Liker wise, the committee declined to consider in mitigation respondent’s claim of suffering from severe depression because he failed to establish any connection between his alleged depression and his misconduct.
*1084 After further considering this court’s prior jurisprudence addressing similar misconduct, the committee recommended respondent be permanently disbarred. The committee also recommended that respondent be ordered to pay restitution to his clients for the un-refunded unearned fees noted in the above factual findings and to the Client Assistance Fund for any claims it may pay to respondent’s clients and their family members who advanced fees.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings do not appear to be manifestly erroneous and are supported by the record. Based on these findings, the board agreed with the rule violations as found | S4by the committee, with a few exceptions. First, in Count I, the board additionally found a violation of Rule 3.2 of the Rules of Professional Conduct because respondent failed to appear in court after having moved for a continuance in the first place. In Count III, the board additionally found a violation of Rule 1.4 because respondent failed to respond to his client’s attempts to contact him in order to finalize payment for respondent’s services, failed to appear at a scheduled meeting with the client, and then failed to answer the client’s subsequent telephone calls. In Counts IV and V, the board also found respondent violated Rule 1.3 when he failed to enroll as counsel or file any pleadings in court on his clients’ behalf. In Count XIV, the board additionally found respondent violated Rule 1.4 by failing to keep his client informed regarding the work he was hired to do and by failing to answer telephone calls from his client. In Count XVIII, the board also found respondent violated Rule 1.16(d) by failing to fulfil his client’s request for a refund of the unearned fee and request for an accounting upon termination of the representation. In Count XIX, the board additionally found respondent violated Rule 1.5(c) by failing to provide the client with a statement showing the outcome of the contingency fee matter (it had been dismissed as abandoned). In Count XXI, the board also found respondent violated Rule 3.2 by failing to file any pleadings on the client’s behalf and repeatedly filing continuances while failing to appear in court, unnecessarily lengthening the litigation. Finally, in Count XXIV, the board additionally found respondent violated Rule 1.2(a) by failing to follow the client’s stated objective of obtaining a divorce.
The board then determined respondent violated duties owed to his clients, the public, the legal system, and the legal profession. His conduct was sometimes negligent while at other times knowing or intentional. The board further determined respondent’s conduct caused great harm to his clients and potential harm to the Client Assistance Fund, noting that he has converted approximately $17,100 in unearned fees and converted a significant portion of the $50,000 he withdrew from |.%his client trust account as cash or in-person withdrawals from the bank. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is disbarment.
In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and vulnerability of the victims. The sole mitigating factor found by the board was the absence of a prior disciplinary record.
After considering respondent’s conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, as well as this court’s prior jurisprudence addressing sim *1085 ilar misconduct, the board recommended he be permanently disbarred. The board also recommended respondent be ordered to pay restitution to his clients or their family members for the unearned fees and unused costs owed to them and pay restitution to the Client Assistance Fund for any claims it may pay to respondent’s clients and their family members.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La. 11/25/96), 683 So.2d 714; In re; Pardue, 93-2865 (La. 3/11/94), 633 So.2d 150.
IsiJn this matter, respondent has engaged in numerous instances of misconduct, including failing to update his primary registration address with the LSBA, failing to provide competent representation to clients, providing services outside of the scope of the representations, neglecting legal matters, failing to communicate with clients, failing to refund unearned fees, withdrawing cash from his client trust account in excess of $50,000, overdrawing his client trust account, failing to maintain records of his- client trust account, failing to fulfill his obligations upon termination of the representations, failing to make reasonable efforts to expedite litigation, submitting duplicative or untimely pleadings to the courts, allowing a client’s lawsuit to be dismissed as abandoned, practicing law while ineligible to do so, engaging in dishonest conduct, engaging in criminal conduct, and failing to cooperate •with the ODC in several investigations. Based on these facts, respondent has violated the Rules of Professional Conduct as found by the hearing committee and modified' by the disciplinary board, with one exception. In Count XIII, the hearing committee made a factual finding that Mr. Gay was unable to contact respondent after his father paid respondent $500. Neither the hearing committee nor the disciplinary board found that respondent had violated any provisions of the Rules of Professional Conduct in this count. However, based on the committee’s factual findings, we find respondent violated Rule 1.4 in Count XIII as alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and |S7mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984).
Respondent violated duties owed to his clients, the public, the legal system, and the legal profession. At times, he. acted negligently, and at other times, he acted knowingly and intentionally. His conduct caused harm to his clients, the legal system, and the legal profession. The baseline sanction for this type of misconduct is *1086 disbarment. The record supports the aggravating and mitigating factors found by the board.
Turning to the issue of an appropriate sanction, we find that permanent disbarment is warranted under Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines. Time and time again, respondent collected fees from his clients and subsequently performed little or no services; he then failed to refund the unearned fees even after admitting that refunds were due, essentially converting his clients’ funds to his own use. Respondent also withdrew in excess of $50,000 in cash from his client trust account between October 2013 and July 2014 yvith no record as to ■the purpose of the withdrawals. Based upon respondent’s testimony and his lack of recordkeeping, the committee concluded that a significant portion of the withdrawals constituted a conversion of client funds. The board agreed with the committee’s conclusion, as do we. In light of the excessive amount of funds respondent has converted, and in order to protect the public, he must be permanently disbarred.
Accordingly, we will adopt the board’s recommendation and permanently disbar respondent. We will also order respondent to pay restitution to his clients or their family members for the unearned fees and unused costs owed to them and pay restitution to the Client Assistance Fund for any claims it may pay to respondent’s clients and their family members.
^J^DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Randal Alandre Toaston, Louisiana Bar Roll number 27900, be and he hereby is permanently disbarred. His name shall be stricken from the roll of attorneys and his. license to practice law in the State of Louisiana shall be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent pay restitution to his clients or their family members for the unearned fees and unused costs owed to them and pay restitution to the Louisiana State Bar Association’s Client Assistance Fund for any claims it may pay to respondent’s clients and their family members. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid. ,